```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
                                              :
UNITED STATES OF AMERICA,                     :
                                              :
         - against -                          :
                                              :    Cr. No. 22-059 (JS)
ROBERT FEHRING,                               :
                                              :
                           Defendant.         :
----------------------------------------------------------------x
```

## **SENTENCING MEMORANDUM OF DEFENDANT ROBERT FEHRING**

Defendant Robert Fehring ("Mr. Fehring," or "Bob") respectfully submits this memorandum in connection with his sentencing. Although the Presentence Report ("PSR") includes a description of Mr. Fehring's background and the offense, he submits this memorandum to provide additional detail regarding these matters. It is respectfully submitted that when the Court considers all of the facts relevant to his sentencing, a sentence of probation with appropriate conditions, is "sufficient but not greater than necessary," to meet all of the sentencing goals embodied in 18 U.S.C. § 3553(a).

Mr. Fehring accepts full responsibility for his actions, and nothing herein is intended to minimize or excuse his conduct. However, his conduct in the present case does not tell the full story of Robert Fehring. His devotion to his family is unimpeachable. His family members and friends know him as a loving, generous, and well-meaning contributor to both his family and the community.

It is respectfully submitted that when the Court makes an individualized sentencing assessment, it will find that a below Guidelines determination is sufficient to comply with the purposes of 18 U.S.C. Section 3553(a).

1

## I. Background

Robert Fehring's Personal History:

Mr. Fehring is 74 years old. He was born on September 3, 1947, in Port Jefferson, New York. Mr. Fehring enjoyed a good childhood, raised by his mother and father, along with two siblings, in a middle-income household. When Bob was eight years old, he suffered a monumental trauma. While relatives were visiting at his home, his sixteen-year-old male cousin sexually abused him. After luring Bob to one of the upstairs bedrooms, the cousin persuaded Bob to "open his mouth for candy but instead inserted his penis in the defendant's mouth and coerced the defendant to perform fellatio" (P.S.R. par. 67). Bob "never spoke of this incident to his parents or anyone else until after his arrest for the instant offense" (P.S.R. par. 67). Bob's current psychologist believes that "the defendant's involvement in the instant offense may have been triggered by the repressed feelings he has experienced related to that incident" (P.S.R. par 67).

When he was eighteen years old, Mr. Fehring married his high school sweetheart, Barbara Wassung. Although only eighteen at the time of his marriage, Bob took on the responsibility of both a husband and father to be, and he was able to support his young family while maintaining enrollment at Ithaca College, from which he graduated with both a B.A. and, ultimately, a graduate degree. The couple enjoyed a strong and loving fifteen-year marriage and have two wonderful children as a result: fifty-four-year-old Sandra, a school psychologist, and fifty-one-year-old Kurt, a financial investor. However, as time passed, they grew apart and eventually divorced.

In July 1985, Bob married his current wife, Julie. They are still very much happily married, and their marriage has produced two children: thirty-five-year-old Heidi, a schoolteacher and mother to a newborn daughter, and thirty-one-year-old Bradford, a commercial airline pilot. When interviewed by the probation department, Julie Fehring described her

husband, Bob as "a caring husband and father" and she "remains committed to [her husband] and their marriage."

She goes on to say that "she does not believe that [he] would have actually harmed anyone physically and believes that his threats were limited to the words depicted in the letters." Finally, she describes Bob as a "hardworking family man and business owner" who is "beloved by his family and many friends who have stood by him" throughout this ordeal (P.S.R. par. 71). The additional submissions from Bob's children, as well as the many submissions from non-family friends, paint the same picture of this man.

Bob is loved and admired for his personality and character. Such a consistent picture cannot be coincidence. In fact, nothing I say about Mr. Fehring could be more revealing about his true character than the letters of support submitted on Bob's behalf (attached hereto as Exhibit's A-J). Nothing, I submit, attests to the true character of Robert Fehring more than the esteem in which he is held by those whose lives he has touched.

Apparent from all of these letters is that Bob is an important part of the lives of his family and friends. The authentic love and care he provides to his family and friends is evidenced by the outpouring of support he has received in these letters to the Court. However, Bob's caring is not limited to family and friends. In an incredible exhibition of selflessness and disregard for personal safety, Bob preformed the ultimate act of caring: he saved the lives of two complete strangers. In 2008, at the age of sixty-two, while walking on the beach with his family, they noticed two people out in the ocean who appeared to be in distress. Without hesitation, Bob swam out through the heavy current and rescued both people. For this act of selfless bravery, Bob was honored by Good Samaritan Hospital and B103 radio as their Good Samaritan of the week (a transcript of the radio announcement is attached hereto as Exhibit K).

As discussed below, we respectfully submit that Mr. Fehring's strong family ties and friendships, along with his selfless nature, constitute an important part of the "history and characteristics of the defendant" and are a reason for a lesser sentence.

A. **P**LEA **A**GREEMENT

On February 23, 2022, pursuant to a written plea agreement, Mr. Fehring pled guilty before Your Honor, to one count of depositing with the United States Postal Service one or more communications addressed to one or more other persons containing one or more threats to injure the person of the addressee and another, in violation of 18 USC 876(c). The plea agreement contains a stipulated Guidelines range of 51-63 months, based on a Criminal History Category of I. However, the statutory maximum sentence for this violation is 60 months, thereby making the effective Guideline range 51-60 months.

**APPLICABLE SENTENCING LAW**

As the Court is well aware, the Sentencing Guidelines are advisory and while they serve as the starting point for a sentencing court's analysis, the inquiry does not end there. As noted in Nelson v. United States, 129 S. Ct. 890 (2009), where the Court summarily reversed the Fourth Circuit which had upheld a district court's application of a presumption of reasonableness to the guidelines:

> [t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable.

Id. at 892 (emphasis in original). Thus, the guidelines are now only one factor to be considered in the formulation of a minimally sufficient individualized sentence.

When imposing sentence, the Court is required to consider the factors set forth in 18 U.S.C. § 3553(a)[1] in order to create an "individualized assessment" based on a defendant's particular circumstances. Gall vs. United States, 552 U.S. 38, 49-50 (2007); see also United States v. Cavera, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). The result is that "[a] sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime." Cavera, 550 F.3d at 188.

The Court has ample discretion to impose a below-Guidelines sentence. See Kimbrough v. United States, 552 U.S. 85, 101-10 (2007). In doing so, the Court may consider, and rely upon, any information available concerning the background, character, or conduct of the defendant.

---

[1] The relevant factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed" to, inter alia: provide just punishment, deter criminal conduct, protect the public from any future crimes by the defendant, and provide the defendant with rehabilitative training and treatment; (3) "the kinds of sentences available"; (4) "the kinds of sentence and the sentencing range established" for the offense; (5) "any pertinent policy statement"; (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and (7) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

See Cavera, 550 F.3d at 189-91; see also 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense for which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

Moreover, in making an "individualized assessment," the Court is not only empowered to impose a sentence below the Guidelines range, it is required to do so where a lower sentence would be sufficient to comply with the purposes of Section 3553(a). See, e.g., United States v. Dorvee, 616 F.3d 174, 183-84 (2d Cir. 2010); United States v. Ministro-Tapia, 470 F.3d 137, 142 (2d Cir. 2006). This is consistent with the long-standing principle that a Court consider "every convicted person as an individual" and to uphold "the principle that the punishment should fit the offender and not merely the crime." Pepper v. United States, 562 U.S. 476, 487-88 (2011). In sum, the overarching task of a sentencing court is to fashion a sentence that is appropriate for the individual circumstances of the offense and the defendant, and is "sufficient, but not greater than necessary" to achieve the statutory goals of punishment, deterrence, and rehabilitation. 18 U.S.C. § 3553(a).

## II. THE PSR

The PSR calculates a total offense level of 24 and a criminal history category of I.

## III A BELOW GUIDELINES SENTENCE IS APPROPRIATE

Analysis of the Section 3553 factors weighs in favor of a below Guidelines sentence. It is respectfully submitted that a period of probation supervision with psychiatric conditions, is "sufficient but not greater than necessary" to provide just punishment.

As discussed above, the Court should consider "every convicted person as an individual" and that "the punishment should fit the offender and not merely the crime." Pepper, 562 U.S. at 487-88. Here, we submit that a sentence of probation supervision with requisite conditions is appropriate for Mr. Fehring and represents a holistic approach to sentencing an individual.

### A. THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE NEED TO REFLECT THE SERIOUSNESS OF THE OFFENSE, TO PROMOTE RESPECT FOR THE LAW, AND TO PROVIDE JUST PUNISHMENT FOR THE OFFENSE

A sentence of probation supervision, with appropriate psychiatric conditions, would reflect the nature and circumstances of the offense, the seriousness of the offense, promote respect for the law and provide just punishment.

Mr. Fehring, at seventy-four years of age, has no prior criminal record, no prior involvement with the criminal justice system. He suffers from a multitude of serious health conditions and psychiatric issues.

### B. THE HISTORY AND CHARACTER OF MR. FEHRING

As previously stated, prior to the instant offense, Mr. Fehring had no interaction with the criminal justice system. As the numerous letters demonstrate, he is a caring, generous family-man. His importance to the family unit is a factor the Court should consider when it adjudges the "history and characteristics of the defendant." When the sentencing guidelines were binding on the Court, factors such as Mr. Fehring's import to his family would have justified a departure from the applicable guidelines range.

See, e.g., United States v. Londono, 76 F.3d 33, 36 (2d Cir. 1996) ("this Court and other courts of appeals have recognized that a defendant's familial responsibilities may

6

present such 'extraordinary circumstances' that a downward departure in sentencing is necessary and permissible"); United States v. Johnson, 964 F.2d 124, 129 (2d Cir. 1992) (same). Now that the sentencing guidelines are only advisory, the reasoning of these cases supports a non-guidelines sentence below the applicable sentencing range when a defendant is a valuable and indispensable member of the family unit, as we submit Mr. Fehring is.

Mr. Fehring's extraordinary acts of heroism are also relevant to the Court's consideration of the "history and characteristics of the defendant" when fashioning an appropriate sentence.
As demonstrated in the letters submitted herewith, it is clearly Mr. Fehring's nature to do good for his family, friends, and community.

i. **MR. FEHRING'S HEALTH ISSUES**

Robert Fehring suffers from a myriad of serious health issues. At present, Bob suffers from two aortic aneurysms, scattered small lung nodules, chronic kidney issues, multiple spine issues, vertigo, tinnitus, substantial hearing loss, as well as lymphodema and venus insufficiency in his left leg (P.S.R. par's 74-78)(Medical Records attached hereto as Exhibits L&M). As would be expected with such a plethora of health conditions, Bob is on a number of medicines (P.S.R. par. 80). Of equal or perhaps more note are Mr. Fehring's mental health issues. As described in the presentence report, Mr. Fehring has a long history of situational depression and suicidal ideation (P.S.R. par's 81-83). This is a man who has suffered his entire life in emotional pain, all stemming from the sexual abuse he suffered as a child at the hands of a male relative. While Bob's actions in the instant case are not excusable, they must be seen through the prism of his sexual abuse and subsequent, lifelong mental health struggles.

### C. THE NEED TO AFFORD ADEQUATE DETERRENCE TO CRIMINAL CONDUCT AND PROTECT THE PUBLIC FROM FURTHER CRIMES OF THE DEFENDANT

Since his arrest, Mr. Fehring has entered into treatment with a mental health professional. During that time Bob was able to reflect on his actions, and the root cause for them, and he fully appreciates both the wrongness of his conduct as well as the potential dangerousness of it. He is committed to living the same law-abiding life he did before this case, and never again write such harmful letters. A sentence of probation, with appropriate conditions, will provide adequate specific deterrence.

The effect of harsh sentences as "general deterrents" is questionable. Social science appears to undermine the notion that lengthy sentences will deter others from committing similar crimes. See Amy Baron-Evans, Sentencing by the Statute, pp. 7-9 (April 27, 2009, revised Dec. 21, 2010) ("…potential criminals … do not believe [that] they will be apprehended and convicted," and therefore, they do not "consider sentence consequences in the manner one might expect of rational decision makers") (citing Michael Tonry, Purposes and Functions of Sentencing, 34 Crime and Justice: A review of Research 28-19 (2006)), a copy of Ms. Baron-Evan's article can be found at https://nyn.fd.org/content/sentencing-statute-amy-baron-evans-2009. Because there is no evidence to suggest that sentencing Mr. Fehring to a more severe punishment will lead to a reduction of crime through general deterrence mechanisms, it is respectfully submitted that the sentence we are recommending is "sufficient, but not greater than necessary" to achieve the statutory goals of deterrence.

### D. THE NEED TO AVOID UNWARRANTED SENTENCE DISPARITIES AMONG DEFENDANTS WITH SIMILAR RECORDS WHO HAVE BEEN FOUND GUILTY OF SIMILAR CONDUCT

Just a few weeks ago, David George Hannon, who previously pleaded guilty to

retaliating against a federal official by threatening, in violation of 18 U.S.C. 115(a)(1)(B). Specifically, the offense that Hannon committed involved the mailing of threats to Representative Ihan Omar. Hannon's email stated the following: "Your Dead You Radical Muslim." We Are Ready To Carryout Mass Assassinations Against Alquida Radicals That Have Somehow Got Into Our American Political Parties." It went on to say "Your Already On The HIT LIST BY OUR AMERICAN PATRIOT ARMY AND THE MOUSAD!" The message then warned Representative Omar to get more security within a week or she and the three other Representatives would be "six feet under." The message asked if she was "ready to die for Islam." The email closed with "YOU WONT HEAR THE BULLET GOING THROUGH YOUR OR THEIR HEADS! ALL FOUR OF YOU CONGRESS WOMEN WILL DIE AND THE AMERICAN PEOPLE WILL CHEER! PATRIOTS AGAINST ISLAM! GOD BLESS AMERICA!"

Hannon was sentenced by U.S. District Judge Kathryn Kimball Mizelle to 3 years of probation, with mental health treatment. In reaching this probationary sentence, Judge Mizelle noted the defendant's expression of remorse, as well as his lack of any prior criminal history, his age, and his health problems.

The parallels between the Hannon case and Mr. Fehring's case are dramatic and undeniable. Both men deeply regret their actions. Both men lack any prior criminal history. Both men are somewhat similarly aged, although Mr. Fehring is actually seven years older than Hannon, and both men have health problems. Here, the 3553a consideration (that similar defendants with similar records and who have been found guilty of similar conduct should receive similar sentences) cries out for a sentence of probation for Robert Fehring.

**V. CONCLUSION**

For all the foregoing reasons, Robert Fehring respectfully requests that the Court impose a sentence of probation, with any conditions the Court deems appropriate.

Dated: July 25, 2022
       Central Islip, New York

                                                  _____
                                                  Glenn Obedin, Esq.
                                                  Obedin & Weissman
                                                  The Courthouse Corporate Center
                                                  320 Carleton Avenue, Suite 4200
                                                  Central Islip, New York11722
                                                  Tel. 631-979-7777

                                                  *Attorney for Robert Fehring*